Good morning, and may it please the Good morning. Stephen Abraham on behalf of Petitioner Robert Henkel. I've stressed the last few words, Robert Henkel, for a very important reason as we go through. Robert Henkel has appealed from the decision of the District Court denying a motion to set aside a default judgment. This is important to that last sentence in two regards. The first is that it would have been very easy to represent all the parties, but only Robert Henkel appears before you today. That has great importance in terms of the fact. The other is as to the point of a default judgment, because although it may be likened to a bully pulpit, the default and the judgment ultimately entered are not free from contradiction, and are not free from the tests that weigh the evidence and facts against the claims that are being brought against, which there is essentially no opposition. Robert Henkel was judged to be in default thereafter a judgment entered against him, and it is the position of Robert Henkel that the district judge in affirming that is denying the request to set aside that default consider matters that simply do not attach to Robert Henkel and do not support a finding of personal jurisdiction. So his motion to vacate was how long after the default was entered? It was more than two years afterwards, ultimately. The default judgment had been entered in 2008, and, in fact, the precipitating events were an attempt to Well, wasn't the motion to vacate on June, like, four years later? It wasn't. More than two. Four is more than two, but four is And I hadn't meant to divide it by two. What I was trying to recall in my mind, if the court will forgive me, is that there were a number of events that occurred in between that time. In fact, the judgment was 2008, and it was only after there were collateral and unrelated proceedings involving other parties and then an attempt to enforce and enlarge the judgment against Robert Henkel that it was deemed of particular urgency that this matter then be addressed by the court. What is very important to note is that when all of the arguments are set aside, it cost more in gas to drive from my offices to here and to return than Robert Henkel sold in a product in California. $12 Wait a minute. You know, we're here basically on a procedural matter. You're trying to relitigate the basic underlying merits. The question before us is not whether your client did or did not do something for which a judgment was entered against him. That's long past. The question is whether your client's interests are strictly intertwined with Abraham's, so there might be some way for him to resurrect it. I'd like you to address how Rule 58 applies under its no need for separate document concept. You've got three orders in one order. Nothing wrong with that. They're all treated separately for purposes of 58, 59, and 60, are they not? In fact, they're not in this case because they were inextricably intertwined. And why? Why? You're talking about – first of all, Abraham's – this was a judgment for contempt. It's the lawyer. Why is his contempt citation inextricably intertwined with your client's desire to undo the merits of a judgment entered more than two years previously? The reason that it was, Your Honor, is that very specific relief had been sought as to evidence that was material to the question of whether or not there was personal jurisdiction. The attack that was alleged – and it's difficult for me to forgive the courts if I may. I just can't talk about myself in the third person. Well, yes. You're the Abraham we're talking about. I am the Abraham that we're talking about. It's not your evil twin. It has been referred to as my evil twin even in the first person. But the point was that the evidence that was sought to be challenged and the method by which it was introduced was at the heart of the sanctions order. And it was that which Judge Feist then revisited and vacated his decision. That was essential to the determination of the underlying arguments regarding the request to set aside the default because it was that very evidence that was being used. Let me ask you this, Mr. Abraham. Did you represent him at the time that judgment was entered against Mr. Henkel? I did not. As a matter of fact, as the court may well note, there was a default judgment, and this was the consequence of advice of counsel in Iowa, Mr. Johnson, who had submitted a declaration. That declaration, of course, then became the conduit for everything that was happening. The attachment to the Johnson declaration was deemed to be by new science or was argued to be the offending material that gave rise to essentially a number of components of the judge's order. It was on the advice of that counsel who had informed Mr. Henkel that it would be just ghastly expensive to litigate anything in California. But did he tell him that the California court would not have jurisdiction, personal jurisdiction over him? There was absolutely no discussion, as far as I know, of what would have been the consequences, whether of the proceeding and litigation. The understanding was that only by his appearance would the court actually be able to ultimately attach to him an enforceable order. We know that's not the law. The law, in fact, is that when a defendant does not appear in an action, he does so at his peril. That is that subsequently there may be a basis for setting it aside because of a lack of personal jurisdiction, because that must be ascertained in every instance. But it then becomes a fight that must be made. So essentially, what his attorney never told him was that he could defer the first fight, but would then have to fight the second fight. But Mr. Abrams, I'm sure you're a smart lawyer. You understand that your friend in Iowa may have a malpractice problem, but the reality is that your client allowed a default judgment to be entered in against him. And there was no complaint about personal jurisdiction. There was nothing. It was entered. The only question before us is whether somehow that can be resurrected. And the only way that happens is if it's inextricably intertwined with your attempt to set aside the contempt citation, right? No, in fact, it's not, Your Honor. The issue that gave rise to the question of the intertwining of those was based solely on the argument presented by new science that under Rule 4, the appeal was untimely. It is, in fact, that alone that gives rise to that question. There is, in fact— But it's the untimeliness of your appeal, not his appeal. That's incorrect, Your Honor, if I may. The new science had argued that the appeal itself by Robert Henkel was untimely under Rule 4, having argued that the time had passed then to file the notice of appeal. That was the argument that they made. So what day was the order against on Mr. Henkel's order? The order itself was dated—forgive me if I may—the order was on June 15th of 2012. And that was an entire order that included with it three components. But the appeal was filed July 30th of 2012. Correct, Your Honor. So if that had been the only order filed, would you concede that it was untimely? In fact, no, because when you say if that was the only—or if that were the only order—in fact, the order had three components. I know, but I'm saying hypothetically if that were the only order and it were filed June 15th, 2012, filing an appeal July 30th, 2012 is more than 30 days. Oh, absolutely. It would have been—had that been the only order. All right. So then the only way you can resurrect that is it has to be inextricably intertwined, right? Correct. But the point here, the point that I was making, was that the notion was that it was the appeal from the—or, so to speak, the appeal from the order regarding the sanctions that breathed life into the appeal of Robert Henkel.  Until the motion had been decided, the application to reconsider, set aside, and vacate that sanctions that were inextricably a part of the single order, all motions had not been decided, and as such, the argument would have been just as easily made that the appeal taken on behalf of Robert Henkel only was one—a part of appeal from a part of an order as to which the entirety was undecided. It would have been essentially a premature appeal that could potentially have only—only have included a portion of the matters that would have been the subject of the appeal. Rule 4 on its plain face says very clearly that until the last motion is decided, the time to run in order to file a timely appeal doesn't begin. And the argument that new science makes with respect to the untimeliness of the appeal essentially requires that Rule 4 be either rewritten or completely disregarded. But that's only the case if Mr. Henkel's and your appeals are inextricably intertwined. You have conceded to Judge Gallagher's question that if Mr. Henkel's appeal stood alone, he loses. If it stood alone, and what's important there is that if the facts stood alone, it's important to bear in mind that the facts that were essential to the appeal were the ones that were contained in the Johnson Declaration that gave rise then on the basis of the exhibits to the sanction order. And it went more than just sanction. It ordered that certain information be stricken, that it not be regarded, that it be put under seal. So in essence, almost the entirety of the evidence that formed the body of the argument that was essential to Mr. Henkel's appeal was necessarily a part then of what became the fight to allow that material to be considered. New science's order and the sanction's order, the request for an order of contempt, went much further than merely to impose an economic sanction against Mr. Henkel's attorney who was an attempt to undermine what was essentially the very basis for the argument on appeal now that a $20 sale somehow gives jurisdiction, should give personal jurisdiction to a court sitting in California over a transaction that quite frankly was contrived by new science itself. I'd like then only to mention as to a final point in having emphasized that this appeal relates only to Robert Henkel, that one of the other bases in considering the Calder effects test, as the district judge did, was that it gave particular emphasis to the fact that there was an attempt to sell the trade secret. This was significant for two reasons. The first is that the conduct that appears in the first amended complaint at tab 5, paragraph 33, is only alleged as to Michael Henkel and not Robert Henkel. So the first question was how the district judge, I believe, erred in conflating the distinct identities of the parties and imputing the conduct of Michael Henkel to Robert Henkel. The second was, as had been demonstrated by the evidence offered by new science itself in the declaration of Mr. Rubin at tab 14, nobody took the offer seriously. Where the district court correctly categorized this as a tort type of analogy in applying the Calder effects test, the court disregarded the fact that there was no fine, there was no consequence, there never was a sale, there was never anybody to buy it. But again, you're going back to the merits, right? No, what I'm going to is the personal jurisdiction issue because- I understand that, but I mean the reality is that that would normally have been handled at the commencement of the lawsuit, right? It would have been handled, but in an appeal, in an application to set aside a default judgment and to dismiss for lack of personal jurisdiction, the court necessarily must inquire as to the merits for the limited purposes of establishing whether or not there was a sufficient basis. What if this had been 10 years, not 2 years late? Same thing? Rather than the 4, not the 2, but if it had been 20 years later, the question still would have been, if the court lacked personal jurisdiction, much as if it had lacked a subject matter jurisdiction, then the order itself is void ab initio. But you're trying to say because he only got $12 or something, isn't the issue really whether his intended actions would- if Hankel intended that his actions would adversely affect new science in California? And that was the point, and that was- And I'm having a hard time saying that there was really any doubt as to that. In fact, there is substantial doubt to it for a number of reasons. If you look at the Rubin Declaration at tab 14, he identifies himself, or Lumen Health identifies itself as the exclusive distributor for new science domestically. The only sale that was of relevance with respect to the assertion of personal jurisdiction was one bottle that did not- I'm sorry, did not go through what would have been new science's distributor channel. It was only because new science itself directly solicited the purchase of that bottle that that bottle ever went to California. Lumen Health directed Robert Hankel to new science for the purpose of contriving that one sale. Otherwise, the only sales would have gone to Lumen Health at significance because Lumen Health is located in Florida. So the object or the target of the conduct would never have been California. It would have been Florida. All right, Counselor, you're over your time. Thank you. Thank you. Good morning. Good morning, Your Honors. Blair Schleicher on behalf of New Science Corporation. Maybe since where we left off was that in determining whether Hankel's actions caused harm to new science in California, do we consider the potential harm or only the actual harm to new science? Or what was the actual harm to new science from Mr. Hankel's actions? Okay, so let me start at the beginning. The test is under Brayton Purcell, foreseeable effects, foreseeable harm. In this case, undisputed evidence is that the Hankels, including Robert Hankel, have misappropriated new science's trade- Can you speak up a little bit? Absolutely. The undisputed evidence is that the Hankels, including Robert Hankel, have misappropriated new science's trade secret, contacted all of the customers to sell the trade secret product to customers of new science, have threatened to reveal new science's formula. All of that is targeted at New Science, which is a California corporation. So first off, you've got intentional targeting of a corporation in California. Obviously, when you contact a customer, you sell to that customer, that's harm. Foreseeable harm, standing alone. But beyond that, New Science produced evidence of actual harm. And we've been over this now several times, as you can probably tell from the record, that New Science submitted undisputed evidence that has exclusive distributor relationships in each country, including Lumina Health, which is the United States one. So the evidence was undisputed before the district court that New Science would have been entitled to $400,000 per quarter from a legitimate relationship. But instead, Robert Hankel and Michael Hankel decided to take New Science's formula and try and sell a competing product without New Science's consent. And district court clearly considered all that. It's in the order granting default judgment and clearly explanation of the fact that New Science was only asking for $100,000, even though it was entitled for more. So clearly, whether you talk about foreseeable harm, which I think is the standard, or actual harm, we've got to cover. Both standards are easily met. All right. Thank you. Yeah, absolutely, Your Honor. And going back to the timeliness issue, the date is the date. The order was issued June 15, 2012. The appeal was filed July 30, 2012. More than 30 days later. Now, Mr. Abraham has argued that the orders were inextricably intertwined. But the order with regards to the motion to vacate default dealt with the issue of whether there was jurisdiction. The order as to Mr. Abraham was whether he purported to reveal New Science's trade secrets. So two distinct issues. And the motion for reconsideration was only filed on behalf of Mr. Abraham, who is not a party to this case. And so under the clear rules, that does not extend the time to appeal. So unless the Court has further questions, I'll move on to the next issue, which is waiver, which is that Mr. Hankel attempted to file a motion to dismiss the case based on lack of jurisdiction. This is back in 2008, Your Honor. It was rejected for filing, and he never proceeded further in the case. So New Science proceeded to get a default judgment, gave him notice, gave him notice of an order, the notice of request for default judgment, notice that the default judgment was going to be entered. No response. And so Mr. Hankel has not only made an appearance, but he's also waived the right to challenge jurisdiction at this point. Going beyond that, if we want to talk about further on, another issue is that Robert Hankel failed to meet his burden of proof. And this is an issue we've focused on quite a bit because he keeps on insisting that New Science has the burden of proof when the clear case law is that he has the burden of proof. And if you look at the motion compared to what he's argued on appeal, he's waived almost every element of the jurisdictional inquiry. While he focuses on the issue of causing harm here on appeal, he didn't argue that in his motion. There's not even a section, there's not evidence about this issue of harm. It's only appeared on appeal, perhaps in the reply brief in the district court. But that's insufficient, and clearly he hasn't produced evidence sufficient to meet his burden at this point. Your opposing counsel says that Mr. Hankel's appeal is inextricably intertwined with his own for purposes of Rule 58, 59, 60. What's your position on that? Well, as I mentioned, the issue with regard to the motion to vacate default is, are the elements of the jurisdictional inquiry met? With regard to Mr. Abraham, the issue is, did he disclose New Science's trade secrets improperly? So the district court initially found that he had, and then went back on its opinion and decided, well, we'll give him the benefit of the doubt and vacate the order. So he was not found infotent. Two separate issues. So that can't extend the time to appeal. And he's not a party either. He filed it on his behalf alone, not Mr. Hankel's behalf. Mr. Hankel filed no further motions in this case. So I think it's very clear that the appeals are timely. And then to wrap it up, New Science disputed a mountain of evidence, a mountain, a mountain of evidence of unrelenting harassment targeted at New Science Burroughs since 2008 to the present. And if you just consider the evidence that was before the district court the time it ruled on the motion, the contact and customers, the harassing emails, the sales on a worldwide basis, which they do not mention, which are clearly in the district court's order. And then considering all the evidence that came afterwards, threats to reveal New Science's formula to the world for free unless New Science is paid $300 million. All of that is undisputed evidence in the record, and it clearly shows targeting, and it clearly shows harm to New Science. So unless the district court has any further questions, I argue that this evidence is undisputed. We noted that a number of facts were not mentioned in the motions. Evidence was not mentioned. And I think there should be consequences for that. And we'd ask that the order of the trial court be affirmed. Thank you. Thank you, counsel. All right, this case will be submitted.
judges: WARDLAW, CALLAHAN, SMITH